UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JOSHWA CARLISLE,               )
                                    )
          Plaintiff,        )
                                    )
          v.               )      No. 1:23-cv-02067-JRS-MG
                                    )
THE TRUSTEES OF INDIANA  )
UNIVERSITY,                )
PAMELA WHITTEN President,   )
JOSEPH WALLACE,        )
                                    )
          Defendants.    )

## Order

Plaintiff Joshwa Carlisle has sued the Trustees of Indiana University (IU), IU President Pamela Whitten, and Professor Joseph Wallace, bringing claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e17; the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 621 and 634; the Matthew Shepard and James Byrd Jr. Hate Crimes Prevention Act, 18 U.S.C. § 249; and Indiana Code §§ 21-39-4-6 and 22-5-1-5. Carlisle alleges wrongful expulsion and wrongful termination from the Music Therapy Program (the "Program") at Indiana University-Purdue University Indianapolis (the "University"), along with related claims for breach of contract, violation of Due Process rights, discrimination, failure to investigate a hate crime, retaliation, violation of freedom of speech, violation of Equal Protection, defamation, and a "request for new legal precedents." (Am. Compl. 2, 4, 9–10, ECF No. 69.) He claims discrimination based on race, color, sex, national origin, and disability as an Indigenous man with post-traumatic stress disorder. Carlisle seeks

1

damages, reinstatement to the Program, and other injunctive relief.  Several motions are before the Court: Defendants' Motion for Presiding Judge, (ECF No. 71), Defendants' Motion for Summary Judgment, (ECF No. 86), Plaintiff's Motion for Summary Judgment, (ECF No. 90), Plaintiff's Motion for Irrevocable License to Practice Music Therapy, (ECF No. 97), Plaintiff's Motion to Strike and Request for Hearing, (ECF No. 103), Defendants' Motion for Extension of Time, (ECF No. 105), and Plaintiff's Request for Immediate Relief, (ECF No. 111).

### I. Motion for Presiding Judge

Worried that the magistrate judge improperly denied Defendants' Motion for Summary Judgement, (ECF Nos. 65 & 67), Defendants move for all further proceedings to be assigned to Chief Judge James R. Sweeney II.  (ECF No. 71.) Defendants cite 28 U.S.C. § 636 on magistrate judges' authority to enter final decisions upon the consent of the parties, and magistrate judges' inability to hear and determine motions for summary judgment absent the consent of the parties, which is not extant here. 28 U.S.C. § 636(b)(1)(A), (c)(1).  But, here, the Magistrate Judge did not "hear and determine" the summary judgment motion on the merits; rather, the Magistrate Judge granted Plaintiff's Motion to Amend Complaint, (ECF No. 63), thereby making the Amended Complaint, (ECF No. 63-1), the operative complaint ("Complaint") and necessarily rendering the summary judgment motion moot, as noted in the Magistrate Judge's Order, (ECF No. 68).  To remove any doubt, though, the Court now affirms that the Defendants' Motion for Summary Judgment, (ECF

Nos. 65 & 67) is **denied as moot**.  The Motion for Presiding Judge is also **denied as moot**, as well as unnecessary given the terms of the statute.

The Motion for Presiding Judge, (ECF No. 71), is **denied**.

## II: Motion to Strike and Request for Hearing, and Motion for Extension of Time

Before addressing the cross-motions for summary judgment, the Court must determine whether to consider a tardy reply brief.  Plaintiff filed his Response Brief to Defendants' Motion for Summary Judgment on December 23, 2024, giving Defendants until January 6, 2025, to reply under Local Rule 56-1(c).  (ECF No. 105.) Defendants filed their brief on January 8, 2025, two days late.  (ECF No. 101.) Plaintiff moves to strike Defendants' brief, while Defendants move for an extension of time.  (ECF Nos. 103, 105.)

The Court may extend the filing period for good cause after it expired if the party failed to act because of excusable neglect.  Fed. R. Civ. P. 6(b)(1).  Determining whether neglect was excusable or not "is at bottom . . . equitable . . . taking account of all relevant circumstances surrounding the party's omission." *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).  Excusable neglect is at least "something more than a simple failure to meet the deadline due to a busy schedule." *Cato v. Thompson*, 118 F. App'x 93, 97 (7th Cir. 2004)

Deadlines help "force parties and their attorneys to be diligent in prosecuting their causes of action." *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996)

(quoting *Geiger v. Allen*, 850 F.2d 330, 331 (7th Cir. 1988)).  However, the rules acknowledge that, at times, rejecting a negligently late filing that would otherwise advance the case might be the true inequity.  A one-off late filing is "not remotely comparable" to repeated extensions, and the occasional extension may assist in deciding a case on its merits.  *Fidler v. City of Indianapolis*, 428 F. Supp. 2d 857, 868 (S.D. Ind. 2006).

In this case, Defendants were negligent when they missed the deadline while their offices were closed for the holidays.  Scheduling a two-week break from work cannot be a get-out-of-jail-free card from court deadlines, but Defendants filed only two days after the deadline, and Plaintiff filed his response a mere day before the office closure began.  (ECF No. 105).  *Cf. In re Pyramid Energy, Ltd.*, 165 B.R. 249 (Bankr. S.D. Ill. 1994) (winter holidays were not excusable neglect for belated appeal when combined with the fact that the adverse ruling was announced a month before the written order was entered).  Plaintiff had only recently benefitted from a two-week extension of his own to respond to Defendants' Motion for Summary Judgment.  (ECF Nos. 81, 84.)  While Plaintiff moved for his extension before the original time expired rather than after, it was still granted under the same "good cause" standard.  Fed. R. Civ. P. 6(b)(1).  Plaintiff's "motion to strike calls to mind the proverbial reminders that the world is round and that 'what goes around comes around.'"  *See Fidler*, 428 F. Supp. 2d at 868.  Here, the Court's prior exercise of discretion and grace in favor of Plaintiff will come around to Defendants as well.  Plaintiff has not described any particular unfair burden beyond writing the motion to strike while highlighting Defendants'

tardiness. The Court does not believe that the instance of holiday period negligence in filing is likely to become a repeated issue.

Defendants' Motion for Extension of Time is **granted**. Plaintiff's Motion to Strike and Request for Hearing is **denied**.

### III. Motions for Summary Judgment

A. <u>Legal Standard</u>

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court reviews the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). The Court cannot weigh evidence or make credibility determinations on summary judgment—those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). Moreover, the Court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e). Evidence, not speculation, is needed to survive summary judgment. *Khungar*, 985 F.3d at 573.

When reviewing cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion at issue was made. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)). The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150*, 335 F.3d 643, 647 (7th Cir. 2003). The Court will consider each Party's motion individually to determine whether that Party has satisfied the summary judgment standard. *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017) (citing *Celotex*, 477 U.S. at 324).

## B. Background

Plaintiff Joshwa Carlisle was enrolled as a student major in the University's Music Therapy Program. The Program required its majors to complete an internship along with the Program's other credit requirements. Carlisle completed all requirements for his degree except for the internship. (ECF No. 88-2.) Carlisle began interning for Dr. Natasha Thomas, a faculty member, in the fall 2022 term. They had an uneasy working relationship, culminating in a December 15, 2022, meeting over Carlisle's internship performance. Carlisle alleges that Dr. Thomas made stereotypical comments based on Carlisle's race and sex during the meeting. Defendants say Carlisle accused Dr. Thomas of having "daddy issues" and quit his internship. Carlisle denies both allegations. After this meeting, the Program director, Dr. Meganne Masko, informed Carlisle of a meeting to discuss his dismissal from the Program, to be held on January 9, 2023. Carlisle did not attend the meeting

and he was dismissed from the Program, although he was not immediately expelled from the University.  Rather, he could have chosen either to pursue another major or to appeal to the University.  Following his dismissal from the Program, Carlisle contacted—by phone, email, and physical appearance—people in the Program and University administration.  This persistent contact, in conjunction with prior behavior that apparently raised in Defendants' minds a fear of reprisal from Carlisle, among other concerns, led Program leadership to request University police to issue a trespass warning to Carlisle.  Carlisle contacted the Equal Employment Opportunity Commission, Department of Education, and University leadership over the following months, before filing his initial complaint on November 16, 2023.

C.  <u>Discussion</u>

While neither Party used proper citations at all times, as detailed more fully herein, the Court mindful that it need not "scour the record" for evidence that might be relevant, *Grant v. Trs. Of Indiana Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017) (cleaned up), has tried its best on behalf of both Parties to decipher faulty or imperfect citations.

1.  <u>Plaintiff's Motion for Summary Judgment</u>

Plaintiff moves for summary judgment on all claims, asserting that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. (ECF Nos. 90, 91, 98.)  For the following reasons, Plaintiff's motion for summary judgment, (ECF No. 90), must be denied.

A party asserting that a fact is not genuinely disputed must support its assertion by pointing to materials in the record.  Fed. R. Civ. P. 56(c)(1); S.D. Ind. R. 56-1(e). As noted, the Court only needs to consider properly cited materials.  Fed. R. Civ. P. 56(c)(3); *see* S.D. Ind. R. 56-1(e).  Out of Plaintiff's many claims spanning wrongful expulsion, wrongful termination, breach of contract, violation of due process rights, discrimination, failure to investigate a hate crime, retaliation, violation of freedom of speech, violation of equal protection, and defamation, (ECF No. 69), his briefing, (ECF Nos. 90, 91, 98), offers scant citations to the record in support of only two; namely, his discrimination and due process claims. As for his retaliation claim, he cites to no evidence in the record.

To make out a claim for discrimination under Title VI, a Plaintiff must either provide direct evidence or demonstrate "membership in a protected class, meeting the school's legitimate educational expectations, an adverse educational action and worse treatment than that of similarly situated students not in the protected class." *Brewer v. Bd. of Trs. of Univ. of Ill,* 479 F.3d 908, 921 (7th Cir. 2007) (citations omitted).

On his discrimination claim, after a few lines comprising legal conclusions without legal or factual support and even some misstatements of fact, Plaintiff concludes, with his only citation to evidence, that he was "racially discriminated against by Mrs. Debra Burns (Dkt. 69, Ex. A pg 6)." But, ECF No. 69 is the Amended Complaint with no Exhibit A.   So, Carlisle likely meant ECF No. 90, which includes a University discussion board screenshot of Dr. Debra Burns apologizing for cutting Carlisle off in her office.  (ECF No. 90, Ex. A at 6.)  The Court is unable to discern how this document

shows entitlement to judgment as a matter of law or discrimination of any sort. This apology does not directly show Burns acting on the basis of race and does not show that he was treated worse than anyone else. And Plaintiff himself states that at least "genuine issues of material fact exist regarding racial discrimination," (ECF No. 98 at 8), going on to argue that certain inferences should be raised in his favor, (*id.* at 9-12). For example, he states that there is "a strong inference that race played a role in the Plaintiff's dismissal," (ECF No. 98 at 10), and he has established "a genuine issue of material fact that precludes summary judgment," (*id.*) This misconstrues the summary judgment standard. Moreover, although many of Defendant's citations are also faulty and not in compliance with the rules, the Court need not rely on them to find that Plaintiff has failed to meet his burden on his discrimination claim. Indeed, his protestation that the University racially discriminated against him by "failure to enroll [him] in the internship," (ECF No. 91 at 3), and treated him "differently from similarly situated Caucasian students, particularly regarding his internship denial," (*id.* at 6), flies in the face of his own pleadings and lacks any cited evidence in support. Indeed, Plaintiff's sworn Amended Complaint states "around February 1, 2022, Mrs. Natasha Thomas offered the Plaintiff a paid internship." (ECF No. 69 at 10.*)* Similarly, Carlilse "affirms that he did not quit his internship." (ECF No. 98 at 5.) This statement implies that he in fact had an internship. Also, his statement from Samantha Mitchell designated for his due process claim states that "Mrs. Thomas advised Mr. Carlisle that to continue with his paid internship this meeting would have to happen" and "Mr. Carlilse stated . . . he didn't realize that his internship was

in jeopardy." (ECF No. 90-2 at 3.) His allegation of discriminatory conduct also is controverted by some of Defendant's at least substantially proper citations in opposition. For example, in a September 22, 2023, email from Plaintiff to Frank Martinez, Carlisle states "I was . . . fired from my internship January 2023." (ECF. No 95-3, Ex. C at 2.) Plaintiff's motion for summary judgment on his claim of discrimination must be denied.

Plaintiff's due process claim fares no better. To make out a claim for a violation of due process, a Plaintiff must demonstrate that he was deprived of a life, liberty, or property interest without sufficient procedures, including procedural "notice and an opportunity to be heard." *Doe v. Purdue Univ.*, 928 F.3d 652, 659 (7th Cir. 2019); *Pugel v. Bd. of Trs. of Univ. of Ill.*, 378 F.3d 659, 662 (7th Cir. 2004).

Plaintiff generally argues, without citing to admissible supporting evidence, that Defendants denied him a "meaningful hearing," did not afford him the benefit of "witnesses, such as Samantha Mitchell-DeDais," failed to allow the EEOC to contact witness like Mitchell, or provide a "grievance hearing" or "fair investigation" into his claims all in violation of his right to due process. (ECF No. 91 at 4.) The sole evidence he cites to is Sanantha Mitchell's notarized statement, (ECF No. 90-2 at 3-4), and a letter from Roger W. Perry, (*id.* at 5). As best the Court can tell, Samantha Mitchell, his "Emotional Support Advocate" who attended his last meeting with Mrs. Thomas on December 15, 2022, and Dr. Roger Perry, who was not present at that meeting with Thomas, but who appears to be a clinical psychologist. Mitchell states that Carlisle did not quit his internship, while Perry generally states concern about

Carlisle's treatment at the University and offers assistance in Carlisle's appeal process. To the extent he designates this evidence to show "procedural deficiencies," to include "the refusal . . . to contact key witnesses, such as Samantha Mitchell," and refusal to "acknowledge critical evidence provided by Plaintiff," (ECF No. 91 at 4), this designation fails. On the one hand these documents at best evidence that meetings did occur and that an appeal process was proceeding, but that it was Mitchell's and Perry's opinion's that Carlisle was treated unfairly. Nowhere do they detail or otherwise support any of the alleged refusals. As to Ms. Mitchell's opinion that the meeting "seemed calculated and malicious," (ECF No. 91 at 4), this at best creates an issue of fact, which would defeat summary judgment if it were material. Similarly, Dr. Perry's opinion at best creates an issue of material fact, even if it was admissible. It is clearly not based on personal knowledge and merely states his "concern about the way you appear to have been treated." (ECF No. 91 at 5.) How the University *appears* to have treated Carlisle does not establish how he in fact was treated. For their part, Defendants designate admissible evidence, (ECF No. 95-1 at 1-2), that Carlisle was afforded notice and the opportunity to be heard, but declined to participate. (ECF No. 94 at 5.) Plaintiff counters that while he was provided the required notice, it was "minimal," (ECF No. 98 at 7), and that the requisite opportunity to be heard was not a "fair opportunity to present his side in a meaningful, unbiased hearing, (*id*.). At best this creates disputed issues of fact. These designated documents do not negate Defendants' version of events to establish that there are no genuine issues of material fact. Even if they did establish an absence of

genuine issue of material fact, they do not prove the elements of his due process claim, which must be denied.

Finally, Plaintiff is not entitled to summary judgment on his claim of retaliation. (ECF No. 91 at 4; 6-8; ECF No. 98 at 11-12.)  A prima facie First Amendment retaliation case involves speech that was constitutionally protected, a deprivation likely to deter free speech, and that speech was at least a motivating factor in the employer's action. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).  Although Carlisle claims he was "retaliated against for filing complaints with the Equal Employment Opportunity Commission (EEOC) and Department of Education by being expelled . . . without due process," (ECF No. 91 at 7), he fails to cite to even one scintilla of evidence to support this naked allegation.  Defendants counter that Plaintiff was dismissed from the Program over 6 months prior to his EEOC filing, (ECF No. 1-1), and more than 20 months prior to filing his Department of Education, Office of Civil Rights complaint, (ECF No. 95-5).  (ECF. No. 94.)  Carlilse does note, without citation, that although he was dismissed prior to any protected activity, he was harassed and retaliated against thereafter as he tried to "engage with the [U]niversity about his dismissal."  (ECF. 98 at 11.)  Although Plaintiff states "there are material issues of fact in dispute as to whether the Defendants retaliated against Plaintiff for engaging in protected activity," (ECF No. 98 at 12), he contrarily concludes he is entitled to summary judgement, (*id*.). Still, because he has failed to cite to any evidence that there is a connection between any protected activity and his dismissal from the Program, his allegations, even if he had evidence in support, do

not create an undisputed issue of material fact in light of Defendant's evidence in opposition that would allow summary judgment in Plaintiff's favor on his retaliation claim; therefore, it must be denied.

Besides the discrimination and retaliation claims, Plaintiff also continues to raise the issue of spoliation of evidence when his email accounts were deleted. (ECF No. 91 at 2–3; ECF No. 98 at 12–13.) The Court has already considered spoliation and denied a related motion for sanctions. (ECF No. 54.) The Court restates that Plaintiff has not shown that Defendants failed to take reasonable steps to preserve the information or that he was prejudiced. Defendants warned Plaintiff before deleting his email account, giving him the opportunity to save the information he now laments losing.

Plaintiff's Motion for Summary Judgment does not offer evidence to support his claimed absence of genuine issues of material fact. Thus, his motion for summary judgment, (ECF No. 90), as to all claims must be denied.

2. <u>Defendants' Motion for Summary Judgment</u>

Defendants also move for summary judgment, with accompanying brief and appendix. (ECF Nos. 86, 87, 88). The Court notes, as alluded to above relating to improper citations, that Defendants' brief mentions pages IU024 and IU043—60 of Exhibit A, although the filed Exhibit A only runs from pages IU001 to IU0023. (ECF No. 88.) Defendants cite to IU024 for assertions about Plaintiff's "concerning behavior" involving suicidal thoughts, access to firearms, and discussions of a 2010 murder and arson case in which he was found not guilty. IU043—60 supposedly

provide citations for assertions about faculty issues with Plaintiff, inappropriate behavior in a third-grade class, a November 8 meeting with Dr. Thomas, academic issues, disrespect to other students, and a department meeting on Plaintiff's performance, and more support for the "daddy issues" statement and quitting.  Since these pages are missing, the Court must consider summary judgment on the record before it and such assertions play no role in the Court's decision.

Defendants first claim they enjoy qualified immunity from civil damages so long as their alleged conduct comprises official acts within their authority and not reasonably known to be violative of any clearly established statutory or constitutional right.  (ECF No. 87 at 5.)  They also claim that Plaintiff failed to comply with the Indiana Tort Claims Act ("ITCA") regarding his defamation claim.  (*Id.*)

Defendants assert that all Defendants are entitled to qualified immunity.  Pamela Whitten and Joseph Wallace are public university officials whose actions may be protected by qualified immunity.  However, the third defendant, the Trustees of Indiana University, is the governing body of the university, not an official.  The Board of Trustees does not fall within the "professors, deans, and administrators" category that Defendants describe for those subject to qualified immunity.

Turning to Whitten and Wallace, Defendants who raise a qualified immunity defense are entitled to dismissal unless the plaintiff "has come forward with facts that, when viewed in a light most favorable to him, constitute a violation of a federal constitutional right, and . . .  the right was 'clearly established' at the time of the alleged violation." *Siddique v. Laliberte*, 972 F.3d 898, 902—03 (7th Cir. 2020).  The

constitutional right at issue must be "define[d] carefully, and at the right level of detail." *Id.* at 903 (quoting *Frederickson v. Landeros*, 943 F.3d 1054, 1059 (7th Cir. 2019)).

42 U.S.C. § 1983, the framework for suing state actors for violations of the Constitution, "does not allow actions against individuals merely for their supervisory roles of others." *Doe v. Purdue University*, 928 F.3d 652, 654 (quoting *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000)). In *Doe*, claims against the president of Purdue University in his individual capacity were rightfully dismissed since Doe did not assert that the president was involved in any way with the conduct at issue. Such is the case here with Wallace and Whitten. Also, for the reasons below the Defendants have shown that they are independently entitled to summary judgment on all counts based on the claims' lack of merit and the ITCA.

a. <u>Breach of contract</u>

A valid and enforceable employment contract must contain four terms in Indiana: "1) it must state the place of employment; 2) it must state the period of employment; 3) it must state the nature of the services the employee is to render; and 4) it must state the compensation the employee was to receive." *Sweet v. Indianapolis Jet Ctr., Inc.*, 918 F. Supp. 2d 801, 805 (S.D. Ind. 2013) (citing *Majd Pour v. Basic Am. Med., Inc.*, 512 N.E.2d 435, 439 (Ind. Ct. App. 1987)). The "[University] Music Therapy 2023 Handbook for the Beat Scholars Internship Experience" that Plaintiff points to as his implied contract provides expectations for interns that would be consistent with any at-will employment, not a contract for a term of work. Plaintiff cites *Sweet*

to support his implied contract argument, but that case does not anywhere support his argument that student handbooks create implied contracts between a university and student. In any event, he does not point to the language in the handbook he believes creates a contractual obligation. An employment handbook that "does not contain a clear promise of secure employment" is also not a contract. *Harris v. Brewer*, 49 N.E.3d 632, 642 (Ind. Ct. App. 2015). The only relevant potion of the handbook says that "the supervisor reserves the right to make final decisions, which may include termination of the . . . position" and that they would follow the policies of the University Community Engaged Associates program. Carlisle has failed to make out a breach of contract claim.

b. <u>Due Process</u>

The Due Process clause's protections apply when someone is deprived of life, liberty, or property, so a threshold question for this claim is if Plaintiff lost a liberty or property interest. *Doe v. Purdue Univ.*, 928 F.3d 652, 659 (7th Cir. 2019). To claim a property interest in an education, a plaintiff must show broken contractual promises, not just an interest in remaining enrolled. *Id.* at 660. A liberty interest may involve deprivation of the freedom to pursue the occupation of one's choice. *Id.* at 661. Procedural due process requires "notice and an opportunity to be heard." *Pugel v. Bd. of Trs. of Univ. of Ill.*, 378 F.3d 659, 662 (7th Cir. 2004). Adequate due process depends on context: a tenured public employee might be entitled to a pretermination hearing, while a student may receive less-rigid procedures. *Id.* at

663.  Employees with property interests in their jobs also demand pretermination hearings.  *Flynn v. Sandahl*, 58 F.3d 283, 288 (7th Cir. 1995).

Plaintiff has not shown a contractual property interest in his education or internship that warrants Due Process protections, and he has not claimed deprivation of any other liberty interest.  While Plaintiff may find the meeting after he was already dismissed from the department and the university's appeal process unfair, a plaintiff "cannot recover simply because the procedures were unfair, even if they were."  *Doe*, 928 F.3d at 659.

### c.  Wrongful termination

Employment in Indiana is presumed to be at-will, meaning employment may be terminated by either party at will, with or without reason.  *Harris v. Brewer*, 49 N.E.3d 632, 639 (Ind. Ct. App. 2015).  As discussed above, Plaintiff has not shown evidence to rebut the presumption that he was employed at-will.  He also does not assert that his employment fits within any of the exceptions to the employment-at-will doctrine.  *See Harris*, 49 N.E.3d at 643.  Thus, he has failed to show wrongful termination.  First Amendment retaliatory issues are addressed below.

### d.  Wrongful expulsion

Plaintiff claims wrongful expulsion, in violation of Indiana Code § 21-39-4-6.  That section of the Code describes the jurisdiction of campus police officers at state educational institutions, not a cause of action for dismissed college students.  This claim is without merit.

### e.  Failure to investigate a hate crime

Plaintiff alleged failure to investigate a hate crime under 18 U.S.C. § 249, but Plaintiff's Response acknowledges that "this claim is without merit." (ECF No. 96 at 18.)  Indeed, 18 U.S.C. § 249 itself is a penal statute addressing violent hate crimes with no connection to any of Plaintiff's allegations.  This claim is denied.

f.  First Amendment retaliation

Plaintiff alleges that his dismissal from the Music Therapy program, the trespass order, and deletion of his digital records were retaliatory acts by the Defendants based on his speech.  A prima facie First Amendment retaliation case involves speech that was constitutionally protected, a deprivation likely to deter free speech, and the protected speech was at least a motivating factor in the employer's action.  *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).  For a government employee, the speech must be on a matter of public concern and the plaintiff's interest in commenting on the matter must outweigh the state employer's interest in efficiency under the *Connick-Pickering* analysis.  *Id.* at 716 n.2; *Williams v. Seniff*, 342 F.3d 774, 782 (7th Cir. 2003).  A matter of public concern "relat[es] to any matter of political, social or other concern to the community." *Khauns v. Sch. Dist. 110*, 123 F.3d 1010, 1014–15 (7th Cir. 1997).  To determine if a public employee's statement addressed a matter of public concern, courts consider the "content, form, and context" of the statement, with content being most important.  *Id.* at 1014.  Plaintiff claims that his alleged statements would merit protection for discussing matters of public concern; Defendants move for summary judgment on the ground that telling a supervisor that they have "daddy issues" is not a matter of public concern.

18

On its face, the content of a statement that one's supervisor has "daddy issues" does not relate to any community concern. Plaintiff argues that his interest in pursuing music therapy to help marginalized populations and his concerns about his potential unfair treatment are matters of public concern. Yet, he has not designated evidence to show that his desire to help marginalized populations, or speaking about unfair treatment, had anything to do with his termination. Any alleged issues between Dr. Thomas and her father are not of public interest. His attempt to suggest that because he was protesting his treatment, anything he said in that protest suddenly becomes public interest is unavailing.

g. Equal Protection

Plaintiff alleges that he was denied equal protection of the law when University police issued him a trespass notice. To establish an Equal Protection claim, Plaintiff must demonstrate that he was treated differently from members of the unprotected class to whom he is otherwise similarly situated. *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922 (7th Cir. 1996). Defendants point out that Plaintiff made no showing that he was treated differently from anyone of another race when he was told he could not enter the campus. Plaintiff's response states that he "can show that similarly situated individuals who were not members of his protected class were treated more favorably," but does not go on to make that showing. The non-moving party in a summary judgment motion must "respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th

Cir. 2017) (citing *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008)).  More colloquially, the non-moving party must "put up or shut up."  *Id.* Here, fatally, Plaintiff has not put anything up.

### h.  Defamation

Defendants state that Plaintiff's defamation claim fails as a matter of law because Plaintiff did not send notice of his tort claim.  Plaintiff does not address this in his response.  Issues of waiver aside, Indiana Code provides that "a claim against the state is barred unless notice is filed with the attorney general or the state agency involved within [270] days after the loss occurs." Ind. Code § 34-13-3-6.  Plaintiff has not shown that he did provide notice or was justified in not doing so.  This claim fails.

### i.  Conclusion

For the above reasons, Defendants' Motion for Summary Judgment, (ECF No. 86), is **granted** on all claims.

## IV: Motion for Irrevocable License to Practice Music Therapy

Plaintiff separately pleads that he has exhausted all remedies at law, and thus is entitled to equitable relief in the form of an irrevocable nationwide license to practice music therapy from "the Supreme Court."  (ECF No. 97.)  Plaintiff also requests a declaration that Defendants' actions violated his Fifth and Fourteenth Amendment Due Process rights, an order for defendants not to impede his ability to practice music therapy, and compensation for harm to his reputation and career.

The Judiciary Act of 1789 gives federal courts their power to issue equitable remedies.  *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2551 (2025) (citing S. Bray & E.

Sherwin, Remedies 442 (4th Ed. 2024)).  This power is limited to "those sorts of equitable remedies 'traditionally accorded by courts of equity' at our country's inception." *Trump* at 2551 (quoting *Grupo Mexicano de Dessarrollo, S. A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999)).

This Court does not have the power to award a national license to practice music therapy, if such a license even existed.[1]  *Trump*, 145 S. Ct. at 2054 (federal courts lack the power to issue universal injunctions).  Plaintiff has not provided any basis to find that awarding a credential typically granted by a professional association is within the Court's equitable powers.  He also does not point to any evidence that he would qualify for such a license.  He does not allege that he applied for licensure and was rejected, and Indiana currently does not even have laws for music therapist licensure.  *See* S.B. 164, 124th Gen. Assemb., 1st Sess. (Ind. 2025) (introducing a bill for licensure of professional music therapists, which has not been enacted).  This Court also cannot make such a request of the Supreme Court of the United States or the Indiana Supreme Court.

Plaintiff further requests for a declaration that Defendants violated Plaintiff's Due Process rights and for compensation addressed in the motions for summary judgment.  Plaintiff also requests an order to prevent "further actions that would impede Plaintiff's ability to practice music therapy, including but not limited to defamation, retaliatory actions, or the withholding of professional licensure."

---

[1] Music therapy licenses exist in some states, where they are managed by state agencies and may require a Music Therapist Board Certification. *State Licensure*, Certification Bd. for Music Therapists, https://www.cbmt.org/state-requirements/ (last visited Sep. 30, 2025).

However, Plaintiff has not shown any threat of these actions, and the IU defendants do not have licensing authority. To award a permanent injunction:

> "[A] party must demonstrate (1) it has succeeded on the merits; (2) no adequate remedy at law exists; (3) the moving party will suffer irreparable harm without injunctive relief; (4) the irreparable harm suffered without injunctive relief outweighs the irreparable harm the nonprevailing party will suffer if the injunction is granted; and (5) the injunction will not harm the public interest.

*Old Republic Ins. Co. v. Emps. Reinsurance Corp.*, 144 F.3d 1077, 1081 (7th Cir. 1998). Plaintiff has demonstrated none of these. Indeed, in granting summary judgment to Defendants, the Court has ruled as a matter of law that the Defendants did not discriminate against the Plaintiff at all. Plaintiff has not designated any additional evidence here that would undermine that ruling or that would alter it based on his protected status as a veteran. In short, he has already failed on the merits, which is enough to defeat this motion.

The Motion for Irrevocable License to Practice Music Therapy, (ECF No. 97), is **denied**.

### V: Request for Immediate Relief

Finally, Plaintiff claims financial and professional hardship from his expulsion. (ECF No. 111). He requests that the Court order Defendants to cancel his debt, refund his GI Bill payments, waive his PACER fees, and hold a hearing on sanctions.

Plaintiff's requests for cancellation of debt and refund of GI Bill payments to his university amount to compensatory damages and fall within the relief sought in the Amended Complaint. But for the reasons stated, Defendants are entitled to summary judgment on all of Plaintiff's claims and thus Plaintiff is not entitled to damages.

Waiver of PACER fees is uncommon, and "[s]tanding alone, Plaintiff's in forma pauperis status is insufficient to support a request to waive PACER fees." *Attaway v. Welch*, No. 23-cv-2168-RJD, 2024 WL 4445512, at *2 (S.D. Ill. Sep. 26, 2024). Parties have reasonable access to documents through the copies they receive in the mail, free electronic copies if registered with the Court's EM/ECF system, and the option of additional copies for a modest fee. *Id.* Plaintiff has reasonable access to the docket.

The Court has both inherent and Rule 11 powers to impose sanctions. *Methode Elecs., Inc. v. Adam Techs., Inc.*, 371 F.3d 923, 927 (7th Cir. 2004). However, Plaintiff does not provide a basis for sanctions in this motion. Plaintiff's previous petition for sanctions based on spoliation of evidence was rejected in an earlier order. (ECF No. 54.) Without any new basis for sanctions or suggestion of what behavior might constitute acting "in bad faith, vexatiously, wantonly, or for oppressive reasons," the Court has no reason to order a sanctions hearing. *Id.* at 928 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991)).

The Request for Immediate Relief is **denied**.

## VI: Conclusion

For the reasons discussed above, Defendants' Motion for Presiding Judge, Plaintiff's Motion for Summary Judgment, Plaintiff's Motion for Irrevocable License to Practice Music Therapy, Plaintiff's Motion to Strike and Request for Hearing, and Plaintiff's Request for Immediate Relief are **denied**. (ECF Nos. 71, 90, 97, 103, 111.)

23

Also for the above reasons, Defendants Motion for Summary Judgment and Defendants' Motion for Extension of Time are **granted**. (ECF Nos. 86, 105.)

Plaintiff Joshwa Carlisle's claims are all **dismissed with prejudice.** The Court will issue final judgment under Federal Rule of Civil Procedure 58 by a separate order. The Clerk **shall close this case**.

**SO ORDERED.**

Date:   9/30/2025

JAMES R. SWEENEY II, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution:

JOSHWA CARLISLE
11640 High Grass Drive
Indianapolis, IN 46235

Myekeal D Wynn, Jr
Indiana University Office of General Counsel
myesmith@indiana.edu